UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

CASE NO.

------------------------------------------X

QK HEALTHCARE, INC.,

               Plaintiff,

   -against-                                      **COMPLAINT**

NEXTSOURCE BIOTECHNOLOGY, LLC,

               Defendant.

------------------------------------------X

Plaintiff QK Healthcare, Inc. ("QKH"), through its undersigned counsel, hereby alleges as follows, on personal knowledge as to its own acts and otherwise on information and belief:

1.     Plaintiff QKH is a Delaware corporation with its principal place of business in Bellport, New York.  It is a wholesaler of, among other things, prescription pharmaceutical products.

2.     On information and belief, defendant NextSource Biotechnology, LLC ("NextSource") is a Florida limited liability company with its principal place of business located at 80 SW 8th Street, Suite #2660, Miami Florida 33130.

3.     NextSource is a manufacturer of prescription drugs, including Gleostine, a chemotherapy drug used to treat brain tumors and Hodgkin's lymphoma.  NextSource sold significant quantities of Gleostine to QKH from this district.

## JURISDICTION AND VENUE

4.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.     For diversity purposes, Plaintiff and Defendant are citizens of different states in that QKH is a citizen of New York and Delaware, and upon information and belief, NextSource is a citizen of Florida.

6.     Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

7.     Venue is also proper in this district given that the operative agreement underlying this lawsuit designates that venue for all litigation shall be Florida.

## FACTS

8.     QKH and NextSource are parties to a Distribution and Supply Agreement, as amended by the First Amendment (the "First Amendment"), entered into as of, and with an "Effective Date" of, March 1, 2018 (collectively, the "Agreement").

9.     The Agreement had a one-year term from March 1, 2018 to March 1, 2019.

10.    The Agreement was not renewed and it expired on March 1, 2019.

11.    In Sections 2.1 and 2.2 of the Agreement, NextSource appointed QKH as its authorized, exclusive distributor of Gleostine in the human market for a one-year term and as its exclusive distributor of Gleostine in the veterinary market initially only for the period from March 1, 2018 through July 31, 2018.  As exclusive, authorized distributor, QKH would purchase Gleostine from NextSource at negotiated prices, warehouse that inventory, service Gleostine customer orders generated by and placed with NextSource, and service Gleostine customer orders generated by and placed with QKH.

12.    In Section 5.1 of the Agreement, NextSource "guarantees orders to [QKH] from existing Nextsource customers during the Term of this Agreement of at least $5,400,000 per year."

13.    In Section 3 of the First Amendment, NextSource increased its guarantee to

$6,000,000 and accelerated the period by which it guaranteed such orders from February 28, 2019 to December 31, 2018: "NextSource guarantees $6,000,000 of orders to be sent to QKH by credit worthy clients/customers of NextSource (as determined by NextSource in its reasonable discretion) by December 31, 2018, taking into account all orders prior to the Effective Date."

14.     QKH was assured by NextSource that a guarantee of $6,000,000 in orders was easily achievable.  Indeed, on or about March 21, 2018, NextSource's Chief Commercial Officer, Richard Dinovitz assured QKH's President, Sal LaDuca, in writing that "[t]he projected annual sales of Gleostine for 2018 include, in excess of 12,000 units of 10 mg, over 8,000 units of the 40 mg, and over 3,000 units of the 100 mg."

15.     Thus, NextSource was projecting sales of Gleostine in 2018 alone of over $32 million at wholesale prices, which was over five times the amount of orders guaranteed to QKH.

16.     In exchange for NextSource's guarantee of $6,000,000 in Gleostine orders in 2018, QKH agreed to make an initial purchase of Gleostine that was priced, based on a variety of discounts and credits applied by NextSource, to a net total of $4,903,264.

17.     The order consisted of the following:

    (a)     1,000 units of Gleostine 100 mg (item #77318) for $3,515,164.53;

    (b)     906 units of Gleostine 40 mg (item #77312) for $1,091,315.74; and

    (c)     1,000 units of Gleostine 10 mg (item #77309) for $296,783.73.

18.     QKH paid $4,903,264 in full on March 30, 2018.

19.     That $4,903,264 payment was in exchange for the Gleostine plus the promise that by December 31, 2018 NextSource would generate and deliver credit-worthy orders valued at a minimum of $6 million.

20.     Had NextSource not breached the Agreement, QKH ought to have sold all of this initial inventory by December 31, 2018, in addition to any additional orders.

21.     However, as of December 31, 2018, NextSource referred, at most, orders for Gleostine to QKH valued at $208,075.25.

22.     Thus, there was a shortfall of at least $5,791,924 in the value of NextSource's performance under the Agreement.

23.     In Section 5.3 of the Agreement, NextSource granted QKH the right to return Products in accordance with the Return Goods Policy, attached to the Agreement as Exhibit B.

24.     Section 5.3 also provided that "[QKH] will be compensated for returns . . . either by issuance of a credit to [QKH] or a cash payment to [QKH], at [QKH's] option."

25.     All of the Gleostine purchased by QKH from NextSource was purchased during the one-year term of the Agreement in reliance upon this language in Section 5.3 and in reliance upon NextSource's Return Goods Policy.

26.     The relevant provision of the Return Goods Policy provides that products eligible for return are those returned within six (6) months prior to the expiration date printed on each product or within twelve (12) months past the expiration date.

27.     The Return Goods Policy provides that QKH is entitled to its actual cost plus 10% for all eligible returns.

28.     In or about June 2020, QKH returned 426 units of Gleostine 100 mg, which had expired in March 2020, for which QKH paid a net price of $3,515.16 per unit, or $1,497,458.16.

29.     This return satisfied the provisions of the Return Goods Policy.

30.     QKH elected to receive a cash reimbursement for this return, so it is entitled to receive a payment in the amount of $1,497,458.16 plus 10%, which totals $1,647,203.98, for this

return.

31.     In August 2020, NextSource advised that it refused to reimburse QKH for these returned products.

32.     NextSource has kept the returned product.

33.     After expiration of the Agreement, NextSource became the sole market source from whom large wholesalers purchase Gleostine.  Accordingly, the market for sale of QKH's remaining inventory became severely limited.

34.     QKH has the following remaining inventory of 40 mg and 10 mg Gleostine:

(a)     1411 units of 10 mg expiring May 2021 with an original cost of $296.78 per unit; and

(b)     435 units of 40 mg expiring June 2021 with an original cost of $1,204.54 per unit

35.     Of the 1411 units of 10 mg above, QKH paid for 771 units only.  An additional 640 units were from an over shipment by NextSource, and those 640 units need to be returned as well.

36.     These products will become eligible for return on December 1, 2020 and January 1, 2021, respectively.

37.     QKH is owed for these anticipated returns as follows:

(a)     10 mg (771 units): $228,817.38 plus 10% equals $251,699.12; and

(b)     40 mg (435 units): $523,974.90 plus 10% equals $576,372.39.

38.     Thus, the total amount owed to QKH for these anticipated returns equals $828,071.51.

39.     QKH advised NextSource that it wishes to return the product for cash when the products become eligible for return.

40.     NextSource advised that it will not accept the return of the aforementioned

products for a cash refund.

41.    Given that there was a shortfall of at least $5,791,924 in the value of NextSource's performance under the Agreement, QKH has been damaged in the amount of at least $5,791,924.

42.    In summary, QKH has been damaged as follows in the total amount of $5,791,924 by virtue of NextSource's breaches and anticipatory breaches:

   (a)    $5,791,924 for failure of performance by December 31, 2018;

   (b)    $1,647,203.98 for the actual return of 426 units of 100 mg Gleostine; and

   (c)    $828,071.51 for the anticipated return of 10 mg (771 units) and 40 mg (435 units) remaining inventory that QKH paid for.

43.    NextSource has alleged that QKH was unable to sell drugs to other wholesalers not because of any fault of NextSource but because other wholesalers had policies prohibiting the purchasing of prescription drugs from wholesalers (i.e., from other than the manufacturer). This allegation is irrelevant to NextSource's breaches and is also demonstrably false because NextSource was able to secure a $1.2 million order for QKH to sell to another wholesaler, albeit not until July 2019, which did not count towards the December 31, 2018 deadline for $6 million in guaranteed orders.

44.    Paragraph 14.2 of the Agreement provides that prior to commencing litigation, the parties must: (i) "attempt to settle the dispute by direct discussions at the vice-president or higher level" and (ii) if not successful, then by participating in a mediation before the American Arbitration Association.  The "direct discussions" occurred, as did a mediation, but neither was successful in resolving the instant dispute.

45.    Paragraph 14.3 of the Agreement provides that if an attorney is employed for purposes of enforcing the Agreement, then the prevailing party shall receive its reasonable

attorneys' fees and costs.  QKH has retained the undersigned attorneys and have agreed to pay them a reasonable fee.

## COUNT I
**(Breach of Contract)**

46.     QKH realleges each of the foregoing paragraphs of the complaint as though fully set forth herein.

47.     QKH made purchases of over $4.9 million in Gleostine from NextSource in exchange for the Gleostine plus the promise that by December 31, 2018 NextSource would generate and deliver credit-worthy orders valued at a minimum of $6 million

48.     QKH fulfilled all of its obligations under the Agreement.

49.     NextSource only generated and delivered to QKH orders with a value of $208,075.25 by December 31, 2018.

50.     By virtue of the foregoing, NextSource has breached its contract with QKH.

51.     QKH suffered actual damages, in addition to any other damages suffered by QKH, in a sum to be proven at trial, but not less than $5,791,924, exclusive of interest, costs, and attorneys' fees.

## COUNT II
**(Breach of Contract)**

52.     QKH realleges each of the foregoing paragraphs of the complaint as though fully set forth herein.

53.     QKH made purchases of over $4.9 million in Gleostine from NextSource in reliance upon, inter alia, the Agreement, including its ability to return goods for cash.

54.     QKH fulfilled all of its obligations under the Agreement.

55.     NextSource refuses to pay QKH the $1,647,203.98 it owes for products it has

returned.

56.     By virtue of the foregoing, NextSource has breached its contract with QKH.

57.     QKH suffered actual damages, in addition to any other damages suffered by QKH, in a sum to be proven at trial, but not less than $1,647,203.98, exclusive of interest, costs, and attorneys' fees.

## COUNT III
### (Anticipatory Repudiation)

58.     QKH each of the foregoing paragraphs of the complaint as though fully set forth herein.

59.     QKH made purchases of over $4.9 million in Gleostine from NextSource in reliance upon, inter alia, the Agreement, including its ability to return goods for cash.

60.     QKH has products which it can shortly return, and for which NextSource must pay it $828,071.51.

61.     NextSource has made plain that it refuses to accept the return of these additional products for a cash refund.

62.     NextSource breached the contract by clearly and positively indicating, by words or conduct, or both, that it would not or could not perform under the Agreement.

63.     QKH fulfilled all of its obligations under the Agreement, and was willing and able to perform at all relevant times.

64.     By virtue of the foregoing, NextSource has anticipatorily breached its contract with QKH.

65.     QKH suffered actual damages, in addition to any other damages suffered by QKH, in a sum to be proven at trial, but not less than $828,071.51, exclusive of interest, costs, and attorneys' fees.

## COUNT IV
### (Unjust Enrichment)

66.     QKH realleges each of the foregoing paragraphs of the complaint as though fully set forth herein.

67.     In about June, 2020, QKH returned 426 units of Gleostine 100 mg, with a total return value of $1,647,203.98.

68.     The product was returned in accordance with NextSource's Return Goods Policy.

69.     NextSource has not provided a refund to QKH for those returned goods, and refuses to do so.

70.     NextSource also has made plain that it refuses to accept the return of additional products for a cash refund.

71.     Those products cumulatively total $828,071.51.

72.     NextSource has been unjustly enriched by having use, possession and control of the returned product, for which it refuses to issue a refund.

73.     NextSource has been unjustly enriched by having use, possession and control of money for the products for which it refuses to issue a refund.

74.     NextSource has been unjustly enriched by having use, possession and control of the funds due and owing to QKH on account of the goods that QKH wishes to return but which NextSource refuses to accept for a cash refund.

75.     QKH has been damaged, in addition to any other damages suffered by QKH, in a sum to be proven at trial, but not less than $2,475,275.49, exclusive of interest, costs, and attorneys' fees.

WHEREFORE, plaintiff QK Healthcare, Inc. demands judgment in its favor and against defendant NextSource Biotechnology, LLC for such actual damages as it shall prove at trial, together with interest and the attorneys' fees and costs and disbursements incurred by QKH in enforcing this Agreement including in this action, and for such other and further relief in favor of QKH and against NextSource as the Court deems just and proper.

<u>JURY TRIAL DEMAND</u>

Plaintiff demands a trial by jury of all issues so triable.

HAILE, SHAW & PFAFFENBERGER, P.A.

By:   /s/   Gary Woodfield
Gary Woodfield
660 U.S. Highway One, 3rd Floor
North Palm Beach, Florida 33408
Tel.: (561) 627-8100
Fax: (561) 622-7603
E-mail: gwoodfield@haileshaw.com
          bpetroni@haileshaw.com

*Attorneys for Plaintiff*
